**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFREY J. PETREY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 10 C 317 |
| v. ) | |
| ) | Judge George W. Lindberg |
| MICHAEL J. ASTRUE, Commissioner ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey J. Petrey seeks judicial review of the decision by defendant Commissioner of the Social Security Administration ("SSA"), denying plaintiff's application for Disability Insurance Benefits ("DIB"). Plaintiff and defendant have filed cross-motions for summary judgment. For the reasons stated below, plaintiff's motion is granted, and defendant's motion is denied.

**I.  Procedural History**

Plaintiff applied for DIB on November 2, 2004, claiming that he had been disabled since June 18, 1998 due to back pain, leg pain, and anxiety attacks. The SSA denied the claim in 2005, and the SSA Appeals Council denied review. In 2007, on judicial review, Magistrate Judge Schenkier remanded the case for further proceedings. On remand, a different ALJ held a hearing, and denied plaintiff's claim on March 11, 2009. On November 18, 2009, the SSA Appeals Council declined to assume jurisdiction. Plaintiff filed the instant complaint for judicial review on January 15, 2010.

**II.  Prior Proceedings**

A. **Evidence Presented Prior to Remand**

Plaintiff injured his back at work in 1994. (R. 271-72) In September 1995, plaintiff's employer's worker's compensation insurer sent plaintiff to Dr. Charles Slack, an orthopedic surgeon. (R. 156, 272) In a November 19, 1999 summary of plaintiff's medical history, Dr. Slack reported that an April 1997 MRI (magnetic resonance imaging) revealed a herniated disc at the L3-4 level, with an extruded fragment. (R. 156) Plaintiff had back surgery – a right L3-4 hemi-laminectomy with excision of a herniated disc – on May 2, 1997. (R. 156)

Plaintiff returned to work following his surgery, but continued to report to Dr. Slack that he was experiencing back pain. (R. 211) Dr. Slack concluded that plaintiff had a recurrent disc herniation, and treated him with epidural steroid injections. (R. 211) On March 26, 1998, Dr. Slack requested that plaintiff complete two weeks of physical therapy to decrease his pain, during which time he would be off work under a temporary, total disability. (R. 209) After two weeks of physical therapy, however, plaintiff experienced increased pain. (R. 207) On April 27, 1998, Dr. Slack opined that plaintiff should be limited to sedentary work requiring no lifting, repetitive bending, or twisting. (R. 207-08) Dr. Slack also recommended that plaintiff be allowed to change his position frequently, and that plaintiff initially limit his work hours to four hours per day. (R. 208)

Plaintiff returned to work on a limited basis on May 7, 1998. (R. 187) After working for a few days, he missed several days of work due to increased pain. (R. 187) He then attempted to work four days a week at a sedentary position, but continued to have difficulty. (R. 184, 187) A May 19, 1998 MRI indicated that plaintiff had a small disc protrusion. (R. 192) On June 29, 1998, Dr. Slack recommended that plaintiff come off work on temporary disability. (R. 184)

Although a July 27, 1998 electromyogram (EMG) was normal, on August 3, 1998 Dr. Slack recommended that plaintiff remain temporarily disabled due to the interference of pain with plaintiff's daily function. (R. 181) Dr. Slack also recommended that plaintiff see a pain management program doctor. (R. 181)

Dr. Slack completed reports on plaintiff's residual functional capacity on August 23, 2004 and February 3, 2005. (R. 220-22, 107-11) In the 2004 report, Dr. Slack opined that plaintiff could not lift more than ten pounds, and that he had more than fifty percent reduced capacity for walking, bending, standing, stooping, sitting, turning, and climbing. (R. 222) In the 2005 report, Dr. Slack again opined that plaintiff would be incapable of lifting more than ten pounds, and that he would never be able to twist, stoop, crouch, squat, or climb ladders. (R. 109-10) He also opined that due to pain, plaintiff would need to change positions after only fifteen minutes of sitting or standing, and could sit or stand/walk for less than a total of two hours out of an eight-hour work day. (R. 108-09) In addition, Dr. Slack opined that plaintiff would be likely to miss more than four days of work each month due to pain. (R. 110) Finally, Dr. Slack opined that plaintiff was not a malingerer, and that his impairments were reasonably consistent with his symptoms and functional limitations. (R. 108)

Agency medical consultant Kim Young-Ja prepared a physical residual functional capacity assessment on December 22, 2004, based on a review of plaintiff's medical records. (R. 223-230) This consultant opined that plaintiff could occasionally lift and/or carry ten pounds, that he could stand and/or walk at least two hours in an eight-hour workday, and push and pull without limitation. (R. 224) The consultant opined, without explanation, that Dr. Slack's conclusion that plaintiff was unable to work due to pain was "not supported by the evidence in

file." (R. 229)

Medical expert Walter Miller testified at the first hearing that the May 1998 MRI showed disc protrusion, but that there was no evidence of herniation of the disc on the nerve root. (R. 276). Dr. Miller noted a lack of objective evidence (such as further MRI testing). (R. 278) Dr. Miller also noted a lack of evidence of muscle weakness or atrophy. (R. 280) Dr. Miller opined that plaintiff did not meet a listing, based on the objective evidence. (R. 281) He further opined that plaintiff probably could not do his previous work, but that he "does not have serious problems that prevent him from standing and moving and doing light [work]." (R. 282)

A vocational expert testified that a wide variety of light, unskilled jobs would be available to an individual who could lift and carry up to twenty pounds occasionally and up to ten pounds frequently; sit, stand, or walk six out of eight hours; and who had no restrictions on pushing and pulling. (R. 287) The vocational expert testified that there would also be a significant number of sedentary jobs available for such an individual. (R. 290-91) Finally, the vocational expert testified that there would be no jobs available if such an individual missed more than four days of work per month. (R. 288-89)

### B. Denial of Benefits on December 22, 2005

Following the first hearing, the ALJ concluded that plaintiff could perform a limited range of light work, and therefore that he is not disabled. (R. 27-28) The ALJ found Dr. Slack's opinions to be conclusory, and observed that they "appear to be based more on the claimant's subjective assertions and complaints rather than on the objective signs and findings." (R. 24) The ALJ noted that there was no evidence to confirm radiculopathy (nerve root disease), and no evidence of atrophy or loss of strength. (R. 24) In addition, the ALJ found that Dr. Slack's

4

opinions were not consistent with other evidence in the record. (R. 24) Finally, although plaintiff did not testify at the hearing (he merely confirmed a non-attorney representative's summary of the facts), the ALJ found that plaintiff's allegations regarding the extent of his pain and functional limitations were not credible. (R. 25)

### C. Magistrate Judge Schenkier's Remand Decision

In the first action for judicial review, Magistrate Judge Schenkier remanded the case for further proceedings on several grounds. First, Judge Schenkier concluded that the ALJ had not provided "adequate justification for failing to give Dr. Slack's opinions controlling weight, or indeed any weight." (R. 359) In addition, Judge Schenkier concluded that the ALJ had failed to provide a logical explanation for rejecting plaintiff's allegation of mental impairment. (R. 360) Judge Schenkier also found that remand was required because the ALJ had offered no explanation for disregarding evidence that plaintiff had difficulty working more than four days at a time. (R. 361) Finally, Judge Schenkier found that the ALJ's determination that plaintiff was not credible was based on an inadequate record. (R. 362-63)

## II. Proceedings Following Remand: June 4, 2008 Hearing

On remand, a second ALJ heard the testimony of plaintiff, medical expert Walter Miller, and vocational expert Julie Lynn Bose. Plaintiff also presented Dr. Slack's supplemental medical records.

### A. Plaintiff's Testimony

Plaintiff testified that he experiences pain in his lower back, and pain and numbness in his right leg, every day. (R. 461-62) Plaintiff testified that he can only sit for fifteen minutes before he becomes uncomfortable, that he is more comfortable standing than sitting, and that

5

lying down is the most comfortable position for him. (R. 463-64, 477) In addition to the daily pain, sometimes an activity such as bending over or doing dishes will aggravate his back pain. (R. 462-63) Plaintiff takes Vicodin for the pain. (R. 462) On an average day, he uses a heating pad on his back for at least two hours in the morning. (R. 465) Plaintiff uses an ice pack for severe pain at least three times per week. (R. 471)

Plaintiff does his own laundry, washes his dishes, and heats food in the microwave. (R. 476, 479, 481) Plaintiff takes care of his nine-year-old son after school three days per week. (R. 481) Once a week, plaintiff takes his son to baseball practice, which lasts from one to one-and-a-half hours. (R. 482)

### B. Supplemental Medical Records

Plaintiff submitted supplemental medical records showing that he continued to see Dr. Slack approximately every six months from 2006 to 2008. Dr. Slack's notes from a March 28, 2008 visit indicated that plaintiff continued to report back and leg pain. (R. 409) Dr. Slack's physical examination at that visit showed that flexion to fifty degrees and minimal extension and rotation cause lower back pain. (R. 409) However, plaintiff's toe and heel walk continued to be good, and his muscle strength and reflexes remained intact. (R. 409)

### C. Walter Miller – Medical Expert

Medical expert Walter Miller testified again at the hearing following remand. At the second hearing, Dr. Miller testified that plaintiff's existing test results indicated only bulging discs. (R. 486) Dr. Miller again noted that no follow-up testing (such as an MRI) had been done, which would be useful in identifying the cause of plaintiff's pain. (R. 486) Dr. Miller testified that while some examinations in plaintiff's medical records show that plaintiff has a slow and

6

deliberate gait, others show a normal gait. (R. 485-86) His records indicate normal straight leg raising and a normal sciatic examination when seated. (R. 486) There is no evidence of muscle weakness or atrophy. (R. 486) Dr. Miller concluded that the medical record does not contain anything that equals a listing. (R. 486) Given this lack of objective evidence, Dr. Miller concluded that plaintiff has a light residual functional capacity, and that he need not be restricted to sedentary work. (R. 486-87)

### D. Julie Lynn Bose – Vocational Expert

Vocational expert Julie Lynn Bose categorized plaintiff's past work as having a heavy physical demand level, with one prior position skilled and another unskilled. (R. 491) Bose testified that if plaintiff is limited to light work, he would be unable to do the work he has previously done. (R. 491) However, she opined that there is a large range of light, unskilled positions in the national economy with simple, routine, repetitive work, such as mail clerk and automatic machine operator. (R. 491-92) Even if plaintiff was limited to sedentary work, Ms. Bose concluded that there are jobs plaintiff could do, such as bench packer. (R. 492)

If plaintiff had to alternate sitting and standing in fifteen-minute intervals throughout an eight-hour work day, Ms. Bose opined that the number of some of the available positions would be reduced, but that the positions she listed would not be ruled out. (R. 493-94) However, these positions would be ruled out if plaintiff had to take four unscheduled fifteen-minute breaks during an eight-hour work day, or if he had to miss more than four days of work per month. (R. 494-95)

## III. March 11, 2009 Administrative Decision

In reaching her decision, the ALJ used the five-step analysis prescribed by 20 C.F.R. §

404.1520. At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since June 18, 1998. (R. 310)

At step two, the ALJ concluded that plaintiff has two severe impairments: post-lumbar laminectomy failed back syndrome and depression. (R. 310) However, at step three, the ALJ concluded that plaintiff's impairment or combination of impairments does not meet or equal a listed impairment. (R. 312) The ALJ relied on Dr. Miller's testimony that there was no evidence of neuropathy, muscle weakness, or atrophy, and noted that there was evidence of only minimal disc bulging and protrusion with no documented nerve compression. (R. 312) In addition, although the ALJ recognized that plaintiff has been diagnosed with depression, she concluded that this impairment does not meet listing 12.04(B) because plaintiff has never been under any psychiatric treatment. (R. 312) The ALJ also noted that plaintiff's symptoms of depression appear to have decreased since January 2000, and that his depression has not resulted in any marked restriction in his daily activities, his ability to maintain social functioning, or his ability to maintain concentration, persistence, or pace. (R. 312)

At step four, the ALJ found that plaintiff has the physical residual functional capacity to perform light or sedentary work, with a sit/stand option every thirty minutes. (R. 313) The ALJ concluded that plaintiff's statements concerning the intensity, duration, and limiting effects of his symptoms "are not entirely credible," and characterized his allegations as "exaggerated" in view of the progress notes and MRIs that did not identify symptoms and impairments consistent with his complaints. (R. 313) The ALJ also found that plaintiff has the mental residual functional capacity to understand, remember, and carry out unskilled, simple, repetitive, and routine tasks. (R. 313) Based on these findings, the ALJ concluded that plaintiff cannot perform his previous

jobs, since they involved heavy work. (R. 314)

At step five, the ALJ concluded that based on plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that plaintiff can perform. (R. 315) The ALJ cited the vocational expert's testimony that even if plaintiff's limitations require him to alternate sitting and standing every fifteen minutes, he could perform more than ninety percent of unskilled sedentary jobs, and fifty percent of unskilled light jobs. (R. 315)

## IV. Analysis

In his motion for summary judgment, plaintiff raises the following issues: (1) whether the ALJ erred in rejecting treating physician Charles Slack's conclusions relating to plaintiff's limitations; (2) whether the ALJ's finding as to plaintiff's residual functional capacity was supported by the evidence, and whether the ALJ properly explained that finding in her decision; and (3) whether the ALJ erred in discounting plaintiff's credibility.

Where the Appeals Council has denied a request for review, the ALJ's decision is the SSA's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405g. In this context, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court "'conduct[s] a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and 'the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.'" *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting

*Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Although the Court gives the ALJ's credibility determinations "special deference," the ALJ must "build an accurate and logical bridge between the evidence and the result." *Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006).

Social Security regulations outline a five-step test for determining whether a claimant is disabled:

1. Whether the claimant is performing substantial gainful activity;

2. Whether the claimant has a severe impairment or combination of impairments;

3. Whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;

4. Whether the claimant's residual functional capacity leaves him unable to perform his past relevant work; and

5. Whether the claimant is unable to perform any other work existing in significant numbers in the national economy.

20 C.F.R. §§ 404.1520 & 416.920. In order to find that a claimant is disabled, there must be an affirmative answer at either step three or step five. *Briscoe*, 425 F.3d at 352. The claimant bears the burden of establishing steps one through four; if he does so successfully, the burden shifts to the SSA at step five. *Id.*

The Court first considers plaintiff's argument that the ALJ erred in rejecting Dr. Slack's conclusions as to the limitations resulting from plaintiff's impairments. A treating physician's opinion generally is entitled to more weight than a non-treater, and it is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Even if the ALJ does not give a treating physician's opinion controlling weight, she may not reject it; rather, she must weigh it according to the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the amount of relevant evidence used to support the opinion, the consistency of the opinion with the record as a whole, and the physician's specialty. *Id; see also Campbell v. Astrue*, No. 10-1314, 2010 WL 4923566, at *8 (7th Cir. Dec. 6, 2010).

As Magistrate Judge Schenkier aptly observed in the first appeal in this matter, "the treater will be in the best position to comment on the genuineness of subjective complaints" such as pain. (R. 359) Indeed, Judge Schenkier recognized that "[t]hat might be the case here, where Dr. Slack treated Mr. Petrey over an extended period of time; made numerous efforts to get Mr. Petrey back to work; and could observe first-hand the difficulties presented." (R. 359) Judge Schenkier remanded the case, in part, based on the first ALJ's failure "to provide adequate justification for failing to give Dr. Slack's opinions controlling weight, or indeed any weight." (R. 359) Plaintiff contends that the second ALJ's decision suffers from the same failing.

Like the first ALJ who considered plaintiff' claim, the second ALJ suggested that Dr. Slack's opinions should be disregarded because they were largely based on plaintiff's subjective complaints, rather than on objective evidence. (R. 313) Although the ALJ acknowledged that plaintiff had decreased motion and could not do heavier activities, she cited the results of plaintiff's examinations that show that his toe and heel walk was good, that his muscle strength and reflexes were intact, and that the most recent testing showed only minimal disc protrusion and bulging. (R. 313-14) The second ALJ also cited the medical expert's observation that no

11

follow-up testing had been done, such as an MRI or EMG, to identify the cause of plaintiff's pain. (R. 313) In addition, the ALJ noted that Dr. Slack did not refer plaintiff for physical therapy or injections, and that he only prescribed pain medications and stretching exercises. (R. 313-14) This objective evidence, concluded the ALJ, does not support a finding that plaintiff is disabled. (R. 313)

The Court agrees with plaintiff that the second ALJ's decision to give no weight to Dr. Slack's findings is not supported by substantial evidence. While it is true that a lack of objective findings is a relevant consideration, "[i]t would be a mistake to say 'there is no objective medical confirmation of the claimant's pain; therefore the claimant is not in pain.'" *See Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010); *see also* 20 C.F.R. § 404.1545(e) (recognizing that "[p]ain . . . may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone"). Dr. Slack reached his conclusions based on his many personal contacts with plaintiff over an extended period of time. Although there is no objective medical evidence showing the cause of plaintiff's back pain, Dr. Slack's conclusions are not inconsistent with the medical evidence. Even if Dr. Slack's opinions were not entitled to controlling weight, the nature and extent of the treating relationship required the ALJ to give it significant weight.[1] The Court finds that the ALJ's decision to give no weight to Dr. Slack's opinions is not supported by substantial evidence.

The ALJ also failed to consider evidence that when plaintiff attempted to return to work, he was unable to work more than four days in a row, despite the fact that one of the specific

---

[1] The Court further notes that plaintiff was originally referred to Dr. Slack by his employer's worker's compensation insurer, a circumstance unlikely to result in bias in favor of a disability claimant.

grounds for remand was the first ALJ's failure to explain why he disregarded this evidence. (R. 361) As Magistrate Judge Schenkier explained, the first ALJ's failure to consider this evidence "was significant, because the VE testified that there would not be a substantial number of jobs in the national economy for a person with that limitation." (R. 361) At the hearing following the remand, another vocational expert reiterated the conclusion that no jobs would exist in the national economy for an individual who would miss more than four days of work per month. (R. 495) Despite Magistrate Judge Schenkier's clear direction and the repeated testimony of the vocational expert, however, the second ALJ did not address this issue. The Court finds that this failing also requires reversal of the ALJ's decision.

Finally, plaintiff argues that the ALJ erred in discounting plaintiff's credibility. The ALJ found that plaintiff's characterization of the intensity and duration of his pain was not credible, based on the lack of objective medical evidence in the record and based on plaintiff's own testimony relating to his daily activities. (R. 313) Specifically, the ALJ noted plaintiff's testimony that he washes his own clothes and dishes, keeps his nine-year-old son three days per week and takes him to baseball practice, and walks and stands to shop for groceries. (R. 313) The ALJ also noted that plaintiff cuts his mother's grass.[2] (R. 313) The ALJ concluded that plaintiff's ability to perform these tasks undermines plaintiff's report "that he could do almost nothing at all." (R. 313)

The Court finds that the ALJ erred in concluding that plaintiff's daily activities contradict

---

[2] This information appears to come from a letter plaintiff's mother wrote to plaintiff's non-attorney representative, in which she reported that plaintiff uses a self-propelled mower. (R. 115) Plaintiff stated in a November 28, 2004 questionnaire regarding his daily living activities that the section of grass he cuts measures twenty feet by fifteen feet. (R. 90).

13

his claim that he is disabled. The relevant question here is whether plaintiff is unable to work. While it is appropriate to consider a claimant's daily activities, the Seventh Circuit has cautioned "against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); *see also*, *e.g.*, *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (observing that "fairly restricted" activities such as washing dishes, helping children prepare for school, doing laundry, and preparing dinner "are not of a sort that necessarily undermines or contradicts a claim of disabling pain"). The limited daily activities plaintiff described that he performed to maintain his household, and his ability to supervise an older child several afternoons and evenings a week, are not inconsistent with an inability to work a forty-hour week. Nor are they inconsistent with plaintiff's testimony that he experiences back and leg pain every day, that he becomes uncomfortable if he sits for more than fifteen minutes, that he uses a heating pad on his back for at least two hours every day, and that he uses an ice pack for severe pain at least three times per week. The Court finds that the ALJ's conclusion that plaintiff was not credible is not based on substantial evidence.

The Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for further hearing. *See* 42 U.S.C. § 405(g). If the Court finds that the ALJ's decision was not supported by substantial evidence, it should remand for further proceedings unless "all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In the latter case, the Court should award benefits to the claimant. *See id.*

Here, plaintiff has supported his claim for benefits through two hearings, and the SSA has

14

had two opportunities to present substantial evidence supporting the denial of benefits. The Court finds that the factual record is fully developed, and supports a finding of disability. The SSA's decision to deny benefits is reversed.

**ORDERED:** Plaintiff's motion for summary judgment [21] is granted. Defendant's motion for summary judgment [27] is denied. The agency's decision is reversed and the case is remanded for the purpose of granting plaintiff's application for benefits, pursuant to sentence four of 42 U.S.C. § 405(g).

ENTER:

_____
George W. Lindberg
Senior United States District Judge

DATED:     December 14, 2010